IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

WILLARD J. KING, )
)
    Plaintiff, )
) NO. 1:21-cv-000055-DCLC-SKL
v. )
)
SEQUATCHIE COUNTY, TENNESSEE )
ET AL. )
)
    Defendants. )

**MEMORANDUM OPINION AND ORDER**

    Plaintiff Willard King filed this lawsuit under 42 U.S.C. § 1983 after the execution of a search warrant at his residence in which he claims that, *inter alia*, officers violated the Fourth and Fourteenth Amendments to the United States Constitution. Defendant Brian Davis, one of the officers King has sued has now filed a motion for summary judgment [Doc. 45], arguing that the force he used was not excessive and invoking qualified immunity.

    In addition, Defendants Marion County, Tennessee, and Sheriff Ronnie "Bo" Burnett, and officers Matt Blansett,[1] Justin Graham, and Paige Durham have also collectively filed a motion for summary judgment [Doc. 50]. Marion County moved for summary judgment arguing that it did not have a policy, procedure, or custom that caused any constitutional violation in this case, citing *Monell v. New York Dept. Soc. Servs.*, 436 U.S. 658 (1978). The law enforcement officer Defendants sued in their official capacity assert that those claims are, in essence, claims against

---

[1] Defendant Matt Blansett was tragically killed in a helicopter crash in August 2022. Defendants filed a Suggestion of Death [Doc. 31] on August 31, 2022. On January 19, 2024, Defendants filed a motion to dismiss King's claims against Blansett for failure to substitute party [Doc. 53]. The Court addresses that motion in this order as well.

1

the County, and because the County has been named, the claims against them in their official capacity should be dismissed. In their individual capacity, they raise the qualified immunity defense and further argue that they did not violate any of King's constitutional rights. The issues have been fully briefed and are ripe for resolution.

I. **BACKGROUND**

On October 3, 2019, Officer Brian Davis was part of a law enforcement team assisting the Tennessee Bureau of Investigation ("TBI") in the execution of a search warrant[2] at King's residence [Doc. 57, Statement of Material Facts, ¶ 1-2, 4]. The search warrant was based on information that a confidential informant provided to the Sequatchie County Sheriff's Department that King's son, Adam King, and others had murdered a man on King's property and hidden his body in a pit on the property [*Id.* at ¶ 2]. King's property is comprised of about five acres of land, King's residence, a trailer where his son lives, and several garages and other structures [*Id.* at ¶ 6]. At a briefing with the agents prior to the execution of the search warrant, a TBI agent advised law enforcement officers this operation was "high-risk," that King should be considered both armed and dangerous, and that King had made threats against law enforcement officers in the past [*Id.* at ¶ 11]. In fact, King previously threatened to shoot law enforcement if they attempted to come onto his property [Doc. 59, SMF, ¶ 10]. Based on that history, law enforcement utilized a "threat matrix" in deciding how best to employ various SWAT teams in the execution of the search warrant, including that the search involved a potential homicide that occurred on King's property and that weapons were involved [Doc. 57 at ¶¶ 7-8].

---

[2] Notwithstanding that law enforcement entered Plaintiff's residence based on a state issued search warrant, the search warrant has not been made a part of the record and remains sealed in state court. Since there are no challenges to the legitimacy of the search warrant, the Court will operate under the assumption it was validly issued and supported by probable cause.

2

Case 1:21-cv-00055-DCLC-SKL   Document 81   Filed 10/16/24   Page 2 of 19   PageID #: 783

When officers arrived at King's residence, Davis, along with two other officers, approached the front door while another officer went to the rear to detonate a distractive device [*Id.* at ¶ 14]. Prior to entry, Davis claims that Officer Cody Smith knocked on the front door [*Id.* at ¶ 15]. King disputes that, claiming that "there was no knock at the door heard by [him.]" [*Id.*].[3] Davis then entered the residence, carrying a 25-pound shield in his left hand and his service weapon in his right [*Id.* at ¶ 22]. He was immediately followed by Defendants Justin Graham and Paige Durham [Doc. 59, ¶ 11]. King claims that when Davis opened the door to his residence, the door hit him in the face [Doc. 57, ¶ 18]. Although King does not remember what happened for several seconds after Davis opened the front door, [*Id.* ¶ 24], what happened next transpired in only seconds [*Id.* at ¶ 36]. Davis claims that King approached him and grabbed his shield [*Id.* at ¶ 26]. King disputes that. Although Davis attempted to pin King to the wall, they both fell to the ground immediately and the encounter ended as soon as it began. Graham placed King in handcuffs [Doc. 59, ¶ 16]. Davis and Voss secured King once he fell [Doc. 57, ¶¶ 32, 33]. Moments later, Davis saw what appeared to be two long firearms and a sword near the corner of the entryway where he initially encountered King [*Id.* at ¶ 37]. While King's face was injured in the encounter, King does not know whether the door or Davis's shield caused his facial injuries [*Id.* at ¶ 42]. Graham removed King from the residence, assisted him with the cut, and removed the handcuffs [Doc. 59, ¶ 17]. Although King agrees that Graham had no other involvement with King, [*Id.* at ¶ 20], he alleges that Graham struck him while handcuffed, telling him to "Breathe, pop, breathe." [Doc. 59, ¶ 25].

---

[3] Though disputed, whether Officer Smith knocked and announced is not at issue in this case as King has not asserted in his Amended Complaint a separate Fourth Amendment violation for failure to knock and announce. *See Greer v. City of Highland Park, Michigan*, 884 F.3d 310, 315 (6th Cir. 2018)(when plaintiffs alleged in the complaint that officers did not knock or announce but instead "immediately blew down their front door with a shotgun" they sufficiently alleged a violation of the Fourth Amendment's knock and announce rule).

Defendant Durham did not have any contact with King [*Id.* at ¶ 21]. Her only involvement was to assist in securing the property once the SWAT team had entered the residence [*Id.*]. Sheriff Ronnie "Bo" Burnett was not personally involved with any of the activities or events that occurred at King's residence [Doc. 59, ¶ 5]. King was charged with resisting arrest but was acquitted after a jury trial [Doc. 66, ¶ 7]. This Complaint followed.

## II. LEGAL STANDARD

Summary judgment is proper where "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ. P. 56(c)). The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (internal citations omitted). A mere "scintilla of evidence" is not enough; the Court must determine whether, viewing the record in the light most favorable to the nonmoving party, a fair-minded jury could return a verdict in favor of the nonmoving party. *Id.* at 251–52; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

### A. Davis's Motion for Summary Judgment [Doc. 45].

King asserts a state law aggravated assault and battery claim against Davis (Count I), and alleges that, while acting under color of state law, Davis deprived him of his "rights, privileges and immunities" in violation of the Fourth and Fourteenth Amendment by unreasonably seizing him, using excessive force, depriving him of his liberty without due process of law, and engaging in

4

arbitrary government action that was so outrageous as to shock the conscience (Count VII). Davis asserts that he is entitled to judgment as a matter of law on each of King's claims and that he is otherwise entitled to qualified immunity on Plaintiff's constitutional claims.

Qualified immunity "shield[s] an officer from personal liability when [he] reasonably believes that his . . . conduct complies with the law." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009). It essentially "allows police officers 'breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law,'" *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1017 (6th Cir. 2024) (quoting *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per curiam)). The Court asks two questions when evaluating whether an officer is entitled to qualified immunity: (1) whether the facts show that the officer's conduct violated a constitutional right; and (2) whether that right is clearly established, such that "every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam); *see Woodcock v. City of Bowling Green*, 679 F. App'x 419, 423 (6th Cir. 2017). Once a defendant raises the defense, the burden is on the plaintiff to establish that the Court should not grant qualified immunity. *See Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009). In this case, the Court will examine each of King's claims and whether Davis violated any of King's constitutional rights.

1. **King's claims under 42 U.S.C. § 1983 against Davis in his individual capacity Count VII**

The Court begins with King's § 1983 claims against Davis in his individual capacity. 42 U.S.C. § 1983 provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979). To succeed under § 1983, a plaintiff must show: "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549

5

(6th Cir. 2009). King alleges that Officer Davis deprived him of his rights under the Fourth and Fourteenth Amendments to the United States Constitution. In particular, King claims that Davis deprived him of his "rights, privileges and immunities," and that Officer Davis unlawfully seized him, used excessive force, deprived him of his liberty without due process of law, and engaged in arbitrary government action that was so outrageous as to shock the conscience.

> As an initial matter, § 1983 provides as follows:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory … subjects, or causes to be subjected, any citizen of the United States … within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Thus, Section 1983 provides a federal cause of action for civil damages against a person acting "under color of state law" who deprives another of "rights, privileges, or immunities secured by the Constitution and laws." *Id*. "In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). The Supreme Court has made clear that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id.* at 395 (emphasis added). Thus, to the extent that King attempts to assert a separate excessive force claim under the privileges and

immunities clause, the Court will not entertain such a claim.[4] Instead, both King's unlawful seizure and excessive force claims should be analyzed under the Fourth Amendment's reasonableness standard. *Id.*

    a.    **Unlawful seizure**

The Fourth Amendment protects against "unreasonable searches and seizures[.]" U.S. Const. amend. IV. "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). In this instance, it is undisputed that King was seized.

The next question is whether such seizure was objectively reasonable. Here, it was. Law enforcement officials "may detain persons without probable cause while executing a search warrant if justified by the circumstances." *Michigan v. Summers*, 452 U.S. 692, 705 (1981). "[S]o long as the officers do not detain . . . occupants beyond the point of the premises search, the detention has not exceeded its permissible scope." *United States v. Vite-Espinoza*, 342 F.3d 462, 473 (6th Cir. 2003) (Clay, J., concurring) (explaining *Summers*, 452 U.S. at 705); *see also Los Angeles County, California v. Rettele*, 550 U.S. 609, 613–14 (2007) ("[D]etention represents only an incremental intrusion on personal liberty when the search of a home has been authorized by a valid warrant." (internal citations omitted))). Further, in determining whether a detention has exceeded a reasonable duration, the Court must give substantial deference to the judgment of the officers on the scene. *See, e.g., Muehler v. Mena*, 544 U.S. 93, 100 (2005) (a "2–to 3–hour

---

[4]     King argues that his Fourteenth Amendment claims should not be dismissed, asserting that Defendant "cites to no authority … showing that Plaintiff's Fourteenth Amendment claims should be dismissed in this case." [Doc. 58, pg. 4]. But the issue is under what amendment should his claims be analyzed. The Supreme Court has answered that question in *Graham*.

7

detention in handcuffs in this case [did] not outweigh the government's continuing safety interests.").

In this case, the TBI described the execution of the search warrant as a "high-risk" operation. The operation involved an investigation into a potential murder that allegedly occurred on King's property. Officers determined that King should be considered armed and dangerous, and King had previously threatened officers if they enter upon his property. It is undisputed that Davis encountered King almost immediately upon entering King's residence and that a scuffle quickly ensued in which both Davis and King fell to the ground. At that point, to be sure, King had been seized, but his seizure was not objectively unreasonable under these circumstances. It occurred immediately upon entering King's residence and only lasted seconds before it ended. Moreover, because Davis had information that King was armed and dangerous and had threatened officers in the past, it was objectively reasonable for him to secure King given how quickly he encountered him when he entered his residence. After all, it was not as if King was on the other side of the house – he was right at the door. No reasonable jury could find that Davis's seizure of King violated the Fourth Amendment.

    b.    **Excessive Force**

King also contends that the force Davis used was excessive in violation of the Fourth Amendment. Whether an officer exerts excessive force is determined under an "objective reasonableness" standard. *Barton v. Martin*, 949 F.3d 938, 952 (6th Cir. 2020) (citations omitted). In determining the objective reasonableness of an officer's use of force, the Sixth Circuit requires an examination of "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting

8

to evade arrest by flight." *Id.* at 953 (quoting *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 174 (6th Cir. 2004)).

As an initial matter, the nature of the force that King claims was excessive is unclear. He asserts that when Davis opened the door to his home, the door struck him in the face, injuring him. Assuming the excessive force was Davis opening the door, that does not objectively rise to a constitutional violation. Davis had a right to enter the home as he was assisting in the execution of a search warrant. King does not allege that Davis knew King was standing right in the door's path and intended to strike him when Davis opened the door.

The same is true with Davis's use of his shield. Davis had every reason to be concerned about his own safety when he entered King's house. First, concerning the severity of the crime, Davis was part of a team investigating a murder that allegedly occurred on King's property – undoubtedly a serious crime that justified taking precautionary protective measures. Second, Davis was advised that King should be considered armed and dangerous. In other words, a TBI agent represented that King posed a threat to the safety of the officers. *See Dunn v. Matatall*, 549 F.3d 348, 354 (6th Cir. 2008) (noting that when officer is unsure whether suspect is armed, suspect poses greater threat to officer's safety). Both of those factors justify Davis entering the residence and immediately using his shield as he approached King. More importantly, the manner of Davis's use of his shield was reasonable under the circumstances. He used it immediately upon entering the residence when he encountered King at the doorway. Third, concerning resisting arrest, King claims that he did not resist, while Davis contends that King grabbed his shield and they both fell to the ground. But this disputed fact does not change the objectively reasonable steps Davis took immediately upon entering the residence given the totality of the circumstances. The engagement between Davis and King occurred immediately upon his entry to the house. King was not across

9

the room sitting in a chair. King was at the door, and according to his version, he was injured immediately when Davis entered his house. To be sure, how much force is reasonable can change as the incident develops, but here there was no time for Davis to learn any new information other than what the TBI provided him. *See Wells v. City of Dearborn Heights*, 538 F. App'x 631, 638 (6th Cir. 2013) (noting that the amount of force that can be justified changes as an incident progresses and an officer learns new information). From an objective standpoint, the amount of force Davis used in subduing King was not excessive under the Fourth Amendment. No reasonable jury could find that either the seizure of King or the force used immediately upon entry to the residence was either unlawful or excessive.

  **c. Deprivation of King's liberty without due process of law**

King also asserts that Davis deprived him of his liberty without due process of law. But the Complaint does not explain how Davis did that. King fails to allege any facts suggesting that Davis was involved in depriving King's liberty that would otherwise be unconstitutional. To be sure, Davis was involved in King's seizure, but as discussed above, law enforcement may temporarily detain occupants of a house when they execute a search warrant. Davis was not involved in depriving King of any liberty interest after the initial seizure. Indeed, Officer Justin Graham placed handcuffs on King and removed him from the residence. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555; *see also Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights).

  **d. Engaging in arbitrary government action that was so outrageous as to shock the conscience**

The Fourteenth Amendment's substantive due process protections guard against "governmental deprivations of life, liberty, or property . . . regardless of the adequacy of the procedures employed." *Chambers v. Sanders*, 63 F.4th 1092, 1096 (6th Cir. 2023) (internal quotations and citations omitted). It protects enumerated rights and "those that are implicit in the concept of ordered liberty[] or the interest in freedom from government actions that shock the conscience." *Id.* The "Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Id.* (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998)). The Supreme Court has made clear that "the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *Lewis*, 523 U.S. at 848.

Here King has not presented any facts that would "shock the conscience." *Id.* While he claims that Davis injured him, there is no dispute that his injury occurred immediately upon Davis' entry into King's residence as King stood in the doorway or right next to it. As discussed, under either scenario, one cannot say Davis's conduct under the totality of circumstances was unreasonable – much less shocking.

### 2. King's State law claims against Davis

King has also asserted state law claims of aggravated assault and battery against Davis for the manner in which he effected King's seizure upon entering the house. The basis of this Court's jurisdiction over these claims is supplemental to King's federal claims. Because this Court finds that King's federal claims are without merit, the Court has discretion under 28 U.S.C. § 1367 to continue to exercise supplemental jurisdiction over the remaining state law claims (Count I). However, the Sixth Circuit favors dismissing a plaintiff's state law claims without prejudice where a court dismisses a plaintiff's federal claims. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d

11

514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims."). Accordingly, the Court declines to exercise supplemental jurisdiction of Plaintiff's state law claims and they are **DISMISSED WITHOUT PREJUDICE**.

B.  **Defendant Marion County and Defendant Officers' Motion for Summary Judgment [Doc. 50].**

In Count I, in addition to his claims against Davis, King also asserts a state law aggravated assault and battery claim against officer Justin Graham. In Count II, King asserts state law false arrest claim against Graham. In Count III, King asserts a failure to intervene claim against officers Paige Durham, Matt Blansett, and Sheriff Ronnie "Bo" Burnett. In Count IV (incorrectly labeled Count VII), King asserts under § 1983 violations of his Fourth and Fourteenth Amendment rights to be free from unlawful seizure, excessive force, due process violations, and for engaging in conduct that would shock the conscience against Graham. In Count V, (incorrectly labeled Count VIII), King asserts claims against Marion County for failure to train and discipline and vicarious liability for the actions of its officers.

1.  **Defendants Sheriff Ronnie "Bo" Burnett, and officers Brian Davis, Matt Blansett, Justin Graham and Paige Durham in their official capacity as employees of the Marion County Sheriff's Department**

Defendants Sheriff Ronnie "Bo" Burnett, and officers Davis, Blansett, Graham and Durham assert in their motion for summary judgment that the claims against them in their official capacity should be dismissed. King does not address the essence of these arguments. Rather, he counters that SWAT teams "should have their own policies and procedures" and if they do not then "each individual officer is governed by the policies and procedures of their city/county." [Doc. 60, pg. 3-4].

12

"Official capacity suits . . . 'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent.' " *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Thus, King's claims against the Defendant officers in their official capacity are actually against their employer, Marion County. Thus, because King has sued Marion County, the official capacity claims against the Sheriff and the officers are superfluous and are hereby **DISMISSED**. *Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322, 327 (6th Cir. 2013) (finding a claim against a township's deputy police chief in his official capacity "superfluous" when the township itself was also sued).

2. **Marion County, Tennessee**

As noted, King also asserts claims against Marion County (Count V (incorrectly labeled Count VIII). As an initial matter, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Liability must be based upon "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Thus, to the extent King attempts to hold Marion County liable for the conduct of its officers, his claim necessarily fails and is dismissed.[5]

To state a § 1983 claim against a governmental entity, the plaintiff must allege (1) a constitutional violation, which (2) was directly caused by a municipal policy or custom. *Hardrick v. City of Detroit*, 876 F.3d 238, 243 (6th Cir. 2017). Liability under § 1983 attaches "only where the municipality itself causes the constitutional violation at issue." *Harris*, 489 U.S. at 385. "There are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy

---

[5] King asserts in his Amended Complaint that Marion County is "liable for the unconstitutional and unlawful any, prior acts of these officers involved in this lawsuit . . . ." [Doc. 10, pg. 12-13].

13

or custom." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). A plaintiff may rely on: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Id*.

In this case, King has not identified any legislative enactments or official agency policies that could impose liability on Marion County. King also does not identify any actions taken by officials with final decision-making authority that would have caused King any constitutional injury. Instead, in his Amended Complaint, King asserts that Marion is liable for a failure to adequately train and discipline.

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388. "Deliberate indifference 'is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 737 (6th Cir. 2015) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bryan Cnty.*, 520 U.S. at 409).

In this case, King has not identified any such pattern of similar constitutional violations nor does he pursue a theory that Marion was deliberately indifferent under a single violation theory of the case. Indeed, King does not argue Marion completely fails to train its deputies. *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir. 1982) (internal citations omitted) (even for single violations, a plaintiff must show "a complete failure to train the police force, or training that is so

14

reckless or grossly negligent that future police misconduct is almost inevitable . . . or would be properly characterized as substantially certain to result[.]"). Moreover, simply asserting an injury is not sufficient to establish liability. "Allegations that a particular officer was improperly trained are insufficient to prove liability, as are claims that a particular injury could have been avoided with better training." *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998). King concedes that he has "no knowledge of the policies or customs of Marion County…." [Doc. 59, ¶ 22]. He also has no information concerning the training the officers received from Marion County. [*Id*. at ¶ 23]. Because King has failed to demonstrate a municipal policy or custom that caused the alleged constitutional deprivation, Marion County is entitled to summary judgment on King's § 1983 claim and that claim against Marion County is **DISMISSED.**

> 3. **King's claims against Officers Paige Durham, Matt Blansett and Sheriff Ronnie "Bo" Burnett, in their individual capacities.**

King asserts one claim against officers Durham and Blansett and against Sheriff Burnett in their individual capacities: Failure to intervene (Count III). "Section 1983 generally prohibits a plaintiff from holding one officer liable for another's actions," and, as a general matter, "an officer's 'mere presence' at the scene of excessive force generally does not suffice to hold the officer liable for the force." *Chaney-Snell v. Young*, 98 F.4th 699, 721 (6th Cir. 2024) (citations omitted). Instead, to establish a claim for "failure to intervene" against excessive force, a plaintiff must show that the officer: (1) "observed or had reason to know that excessive force would be or was being used;" and (2) "had both the opportunity and the means to prevent the harm from occurring." *Goodwin v. Painesville*, 781 F.3d 314, 328 (6th Cir. 2015) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997))

In this case, the facts are undisputed that Durham had no contact with King whatsoever [Doc. 59, ¶ 21]. Indeed, her only involvement was in securing the property after the officers had

15

entered the residence. King has not alleged any facts that would in any way suggest that Durham observed or had reason to know about any excessive force, nor that she would have had the opportunity to prevent it from occurring. The same is true of Blansett's involvement. In fact, Plaintiff concedes this point and agrees that both Durham and Blansett should be dismissed [Doc. 60, pg. 3, fn. 1]. In addition, Sheriff Burnett was not present at all and cannot be held liable for failure to intervene. [Doc. 59, SMF, ¶ 5]. To the extent that King claims that Sheriff Burnett is otherwise liable, his claim must fail. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). The right to direct or control employees is, by itself, insufficient to impose liability upon a defendant for the unconstitutional acts of subordinates. *Lillard v. Shelby County Bd. of Ed.*, 76 F.3d 716, 727 (6th Cir. 1996). A supervisor cannot be held liable under Section 1983 for the constitutional violations of subordinates he supervises unless it is shown "that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 719 F.2d 416, 421 (6th Cir. 1984), *cert. denied*, 469 U.S. 845 (1984). No such evidence has been presented in this case. Accordingly, officers Durham and Blansett, and Sheriff Ronnie "Bo" Burnett are entitled to summary judgment on King's failure to intervene claim, and that claim is **DISMISSED**.

    4.    **King's claims against officer Justin Graham in his individual capacity**

King also asserted state law aggravated assault and battery claim and false arrest claims against Graham. He has also asserted that Graham violated his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution. The Court will begin with the federal claims.

Graham followed Davis into the residence. Once Davis and King fell to the ground, Graham handcuffed King temporarily [Doc. 59, ¶ 16]. In doing so, he committed no constitutional

16

violation, as Graham had an important safety concern that justified detaining and handcuffing King during the search of King's home. *See Chaney-Snell v. Young*, 98 F.4th 699, 716 (6th Cir. 2024) (citing *Muehler v. Mena*, 544 U.S. 93, 98 (2005)). And this right to detain included the right to use "physical coercion or threat thereof" required to "effect" his detention. *Id*. (citations omitted).

But once King was handcuffed, King claims that Graham "pulled [him] outside of his home hitting him saying 'Breathe pop, breathe." [Doc. 59, ¶ 24]. Under King's version of events, Graham had handcuffed him and was pulling him out of the house when Graham struck him. According to King's version of the events, Graham had no basis to hit him at this point since he had been subdued. Graham has not otherwise addressed King's allegation in this regard. To the extent that Graham claims he did not strike King when Graham was pulling him out of the house, that is a disputed issue of fact. To be sure, it appears that any force Graham may have applied in "hitting" him was de minimis. But the Sixth Circuit recently noted that it had "'never imposed a de minimis injury' exception to [its] longstanding rule that the use of gratuitous force on an incapacitated arrestee renders a seizure unreasonable." *Chaney-Snell*, 98 F.4th at 716 (quoting *Reed v. Campbell County*, 80 F.4th 734, 750 (6th Cir. 2023). In fact, it made clear that the Fourth Amendment "does not expressly distinguish de minimis force from major force." *Id.* at 715. "Gratuitous violence" inflicted upon an incapacitated detainee constitutes an excessive use of force, even when the injuries suffered are not substantial. *Morrison v. Bd. Of Trustees Of Green Twp.*, 583 F.3d 394, 407 (6th Cir. 2009); *see also, Pigram ex rel. Pigram v. Chaudoin*, 199 F. Appx. 509, 513 (6th Cir. 2006) (slapping handcuffed suspect in the face for being unruly and having a "smart . . . mouth" constituted a Fourth Amendment violation). Because the Court must accept King's allegations that Graham struck King while King was incapacitated, there is an issue of fact

17

here for the jury to decide. Accordingly, Graham's motion for summary judgment on King's excessive force (Count IV) and state-law assault and battery claims (Count I) is **DENIED**.

King also asserts a state claim against Graham for false arrest. But the undisputed fact is that Graham did not arrest King. Officer Lockhart did, and King agreed to dismiss him from the case [Doc. 39]. Thus, King's claim for false arrest against Graham (Count II) is **DISMISSED**.

C. **Defendant's Motion to Dismiss claims against Matt Blansett in his individual capacity [Doc. 53].**

Defendant Matt Blansett died during the pendency of this litigation. On August 26, 2022, Defendants filed on the record a suggestion of death [Doc. 31]. The suggestion of death was filed in the Court's electronic case filing system and only served on Plaintiff's counsel, Gerald Tidwell of Tidwell & Associates, and Ronald Wells, counsel for Defendant Brain Davis. To comply with Rule 25(a), a party has two steps to take. "A party must (1) formally suggest the death of the party upon the record; and (2) serve the nonparty representatives of the deceased party with the suggestion of death in the manner provided in Federal Rule of Civil Procedure 4 for the service of a summons." *City of Harriman, Tennessee v. Hester*, No. 3:22-CV-77-KAC-DCP, 2024 WL 3740304, at *1 (E.D. Tenn. May 17, 2024) (citations omitted). Even though Defendants have not represented that they have served the nonparty representatives of the deceased, this Court will dismiss King's claims against Blansett on the merits as detailed herein without regard to whether Defendants have complied with Rule 25. Accordingly, their motion to dismiss Matt Blansett [Doc. 53] is **DENIED AS MOOT**.

IV. **CONCLUSION**

For the reasons stated, Davis's Motion for Summary Judgment [Doc. 45] is **GRANTED**, and all King's federal constitutional claims against Davis are **DISMISSED WITH PREJUDICE**

18

(Count VII). King's state law claims (Count I) against Davis are **DISMISSED WITHOUT PREJUDICE.**

Defendants' collective motion for summary judgment [Doc. 50] is **GRANTED IN PART AND DENIED IN PART**. Defendant Paige Durham's, Matt Blansett's and Sheriff Ronnie "Bo" Burnett's motion for summary judgment is **GRANTED** and King's claims against them are **DISMISSED WITH PREJUDICE**.

Defendant Justin Graham's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**. Graham's motion is **GRANTED** on King's false arrest claim against Graham, and that claim is **DISMISSED WITH PREJUDICE,** but Graham's motion is **DENIED** with respect to King's state law assault and battery claim and excessive force claim against Graham.

Finally, Defendants' motion to dismiss Matt Blansett [Doc. 53] and Defendant Brian Davis's motion in limine [Doc. 70] are **DENIED AS MOOT**.

**SO ORDERED**:

                                                   s/Clifton L. Corker  
                                                   United States District Judge